UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONALD S. NOOT, SR., <br><br> Plaintiff, <br><br> v. <br><br> DAVID FRANK NOOT, <br><br> Defendant. | Case No. 1:21-cv-00155-BLW-DKG <br><br> **REPORT AND RECOMMENDATION** |

## INTRODUCTION

Before the Court is Plaintiff Donald Noot, Sr.'s Motion to Enforce Settlement Agreement and Renewed Motion for Sanctions (Dkt. 40). United States District Judge B. Lynn Winmill referred all matters in this case to the undersigned and directed entry of an appropriate order as to disposition. (Dkt. 36). Because granting a motion to enforce a settlement agreement would be dispositive with respect to the movant's claims, the undersigned makes the following findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B).

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the decisional process would not be significantly aided by oral argument, the motion will be decided on the record. Dist. Idaho L. Civ. Rule 7.1(d).

**REPORT AND RECOMMENDATION - 1**

For the reasons that follow, the Court will recommend that Plaintiff's motion be granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2021, Plaintiff Donald S. Noot, Sr., brought this breach of contract and unjust enrichment action against Defendant David Frank Noot, alleging that Defendant failed to repay a loan and owed Plaintiff $336,368.97, which included the principal amount of $270,000, plus accrued, unpaid interest. (Dkt. 1 ¶ 16). In response, Defendant admitted that he entered an "agreement where in Plaintiff would transfer money to Defendant in 2012" and that he subsequently received an additional "sum of money" from Plaintiff in or about June 2013, but denied the remaining allegations in the Complaint. (Dkt. 2 ¶¶ 4, 9).

The parties held a mediation with Newal Squyres on October 18, 2021. (Dkt. 40-2 ¶2; 40-3 ¶ 2). Plaintiff and his attorney, Tracy H. Fowler, and Defendant and his attorney, Louis Spiker, attended and participated in the mediation. (Dkt. 40-1; 40-3). At the conclusion of the mediation, Spiker prepared a Memorandum of Understanding Following Mediation ("MOU") and Squyres participated in the process of revising and finalizing the MOU. (Dkt. 40-2 ¶ 3).

The MOU recites that the parties "met and participated in a full-day mediation on October 18, 2021 and to a mutually-acceptable resolution of United States District Court for the District of Idaho Case No. 1:21-CV-00155-CWD." (Dkt 26-1, as attested to by Squyres at Dkt. 40-2 ¶ 4). After setting forth the relevant terms, including, *inter alia*, the principal amount owed, certain payment parameters and Defendant's agreement to

execute documents in support of the settlement, the MOU provides, "[t]he parties agree that a formal settlement agreement incorporating these terms shall be prepared by Plaintiff's counsel. Provided, however, that these terms shall be binding, effective, and enforceable." (*Id.*).

Spiker sent the MOU to Plaintiff's counsel late on Monday, October 18, 2021. (Dkt. 26-2, as attested to by Fowler at Dkt. 40-1 ¶ 6). Plaintiff's counsel made a small change and replied to Spiker minutes later, "[w]ith this change, our client agrees to the Memorandum of Understanding and we have authority to sign on his behalf." (*Id.*). Six minutes thereafter, Spiker replied to Plaintiff's counsel, "My client is agreeable to the change. This email constitutes my client's agreement to the revised memorandum of understanding attached to your email and signature on his behalf. This email confirms that I have my client's authority to sign the memorandum of understanding on his behalf." (*Id.*). *See also* Dkt. 40-3 ¶ 3 (Spiker declaration attesting to emails); Dkt. 40-2 ¶ 5 (Squyres declaration: "At the mediation, Defendant agreed to the terms memorialized in the Memorandum of Understanding.").

On December 1, 2021, Plaintiff's attorney informed Court staff that "the parties engaged in mediation and have reached an agreement in principle to resolve this case. We expect to finalize settlement documents and to submit a proposed order of dismissal to the Court in the next few days." (Staff note entered 12/1/2021; Dkt. 23 at 1). Between December 2021 and April 2022, the parties engaged in negotiations to finalize the settlement documents related to the payment schedule. For example, on January 14, 2022, Defendant's counsel emailed Plaintiff, "If you can confirm that your understanding

**REPORT AND RECOMMENDATION - 3**

is that payments would start in 18 months rather [than] 15 days after the note was executed, I can revise and we can get this matter fully resolved." (Dkt. 26-3, attested to by Spiker in Dkt. 40-3 ¶ 3). No other revisions or demands were made. Plaintiff agreed to Defendant's January 14, 2022, revision, but Defendant's counsel was unable to get Defendant to sign the final settlement documents.[1] (*Id.*). Thus, the parties never filed a proposed dismissal.

In June 2022, Defendant's counsel withdrew. (Dkt. 19, 20). Defendant now represents himself.

In August 2022, the Court issued an Order and Notice of Status Conference, requiring the parties to file a status report with the Court on or before September 19, 2022. (Dkt 23). Defendant filed a brief, handwritten note asserting, *inter alia*, that he was "broke" and "did not agree to the mediation." (Dkt. 27). Plaintiff filed a Status Report and Motion for Sanctions (Dkt. 26), asking the Court to: (1) compel Defendant to sign the settlement agreement; (2) enter a judgment of dismissal incorporating the terms of the settlement agreement; and (3) retain jurisdiction to enforce the settlement agreement. (Dkts. 26, 31, 35). In support of his motion, Plaintiff attached various documents and emails purporting to be evidence of a binding settlement agreement between the parties. (Dkts. 26-1, 26-2, 26-3).

---

[1] The parties' final settlement documents are comprised of the Settlement Agreement, Verified Statement in Support of Judgment of Confession, Judgment of Confession and Promissory Note filed in Dkt. 29 (attested to by Fowler in Dkt. 40-1 ¶ 7) (collectively "Settlement Documents").

Following the filing of Plaintiff's motion, the Court issued a briefing schedule, giving Defendant the opportunity to formally respond to Plaintiff's motion. (Dkt. 28). Thereafter, Plaintiff filed a Supplement with the Court, which included the parties' unexecuted Settlement Agreement and related documents. (Dkt. 29). On October 17, 2022, Defendant filed a handwritten Notice stating: "1. Have not agreed to anything. 2. The loan to Noot Group has passed the statute of limitations. 3. I am broke financially." (Dkt. 30). Plaintiff filed a Reply to Defendant's Notice, arguing that: (1) Defendant had agreed to the settlement twice by way of his attorney's representation to Plaintiff's counsel; (2) that the statute of limitations was inapplicable to the settlement agreement and, therefore, moot; and (3) Defendant is not excused from living up to his agreement solely by virtue of his financial inability. (Dkt. 31).

Defendant subsequently filed two reply briefs, asserting that: (1) although he attended and participated in the mediation, he "did not agree with his counsel, never signed a settlement agreement and has subsequently terminated the relationship with the previous counsel and therefore should not be forced to sign the settlement agreement"; and (2) Plaintiff's underlying claims are barred by the statute of limitations. (Dkts. 32, 34).

On March 1, 2023, Judge Winmill denied Plaintiff's Motion for Sanctions without prejudice on two grounds. First, the Court held that it could not make the "threshold determination as to whether there are any disputed material facts concerning the existence or terms of the settlement agreement" because "the Court does not have any declarations before it - just argument and exhibits." (Dkt. 35 at 2-3). Second, the Court held that if

there are disputed material facts, an evidentiary hearing will be necessary. "Either way, further proceedings will be necessary." (Dkt. 35 at 3). To that end, Judge Winmill referred all matters in the case to the undersigned to "conduct all necessary and proper proceedings pertaining thereto." (Dkt. 36).

The undersigned held a Status Conference with the parties on April 13, 2023, to review the case history and ascertain the parties' intentions for moving forward. (Dkt. 39). The undersigned reminded the parties, consistent with Judge Winmill's order, that any future filings needed to be supported by declarations and/or other admissible evidence, not just argument and exhibits.

On June 2, 2023, Plaintiff filed a Motion to Enforce Settlement Agreement and Renewed Motion for Sanctions. (Dkt. 40). This time, Plaintiff's motion included declarations from three people: (1) Tracy H. Fowler, attorney for Plaintiff (Dkt. 40-1); (2) Newal Squyres, attorney and mediator for the parties' October 18, 2021, mediation (Dkt. 40-2); and (3) Louis Spiker, former attorney for Defendant and attorney for Defendant at the time of the October 18, 2021, mediation. (Dkt 40-3). Each of these individuals attested to their involvement in the mediation, and to the authenticity and accuracy of the relevant settlement documents and emails previously filed with the Court (Dkts. 40-1 ¶¶ 5-7; 40-2 ¶ 4; 40-3 ¶3). Plaintiff's Motion asked the Court to enforce the settlement agreement and afford him two forms of relief: (1) recognize Defendant's bad faith in refusing to sign the finalized settlement agreement and order him to sign the same; and (2) issue an Order or Judgment explicitly stating the terms of the settlement agreement

and the Court's retention of jurisdiction to provide Plaintiff with the ongoing ability to enforce the settlement agreement in this Court. (Dkt. 40 at 2).

On June 23, 2023, Defendant filed a response that did not comply with 28 U.S.C. § 1746.  In that, Defendant states, "I completely disagree with and deny everything I do not admit. Please see accompanying letter. I want the Petition dismissed." (Dkt. 41 at 2). Attached to his response, Defendant submitted an unverified letter wherein he contends that he is not personally responsible for the underlying loan and that, in any event, the 5-year statute of limitation should bar any recovery from Plaintiff. (Dkt. 41).[2]  Defendant did not file any declarations or affidavits challenging the authenticity or accuracy of the mediation and related settlement documents and correspondence submitted by Plaintiff. Nor did Defendant offer any evidence to rebut Plaintiff's contention that the parties entered into a binding settlement agreement at the October 18, 2021, mediation, and thereafter, when the parties agreed upon the more detailed set of Settlement Documents.

Plaintiff filed a reply to Defendant's response on July 7, 2023, arguing that the Court should grant its motion without the need for a hearing because there are no disputed material facts, neither party has requested a hearing and the "costs of an unrequested and unnecessary hearing greatly outweigh the minimal benefits of holding a hearing." (Dkt. 42). Neither party requested a hearing on Plaintiff's motions.

---

[2] Plaintiff submitted evidence from Defendant's divorce proceedings in March 2021, wherein Defendant agreed to take on the financial responsibility for the underlying loan with Plaintiff during negotiations for the division of the couple's community property and liabilities. (Dkt. 40-1 at 6, 8).  Defendant did not offer any evidence or argument to rebut Plaintiff's evidence.  *See* Dkt. 41.

**REPORT AND RECOMMENDATION - 7**

## STANDARD OF LAW

Under Idaho law, a motion for the enforcement of a settlement agreement "is treated as a motion for summary judgment when no evidentiary hearing has been conducted." *Kosmann v. Dinius*, 446 P.3d 433, 438 (Idaho 2019) (quoting *Seward v. Musick Auction, LLC*, 426 P.3d 1249, 1255 (Idaho 2018)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact "that may affect the outcome of the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact and a favorable judgment is due as a matter of law. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, the non-moving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). The non-moving party must go beyond the pleadings and show "by…affidavits, or by the depositions, answers to interrogatories, or admissions on file," that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324. The Court must grant summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

## DISCUSSION

State contract law governs whether the parties reached an enforceable agreement settling the claims alleged in the complaint. *See Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). "A settlement agreement is a contract resolving the parties' underlying dispute and 'stands on the same footing as any other contract and is governed by the same rules and principles as are applicable to contracts generally.'" *Seward*, 426 P.3d at 1255 (quoting *Budget Truck Sales, LLC v. Tilley*, 419 P.3d 1139, 1144 (Idaho 2018)).

"A contract must be complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty." *Kosmann*, 446 P.3d at 439 (quoting *Seward*, 426 P.3d at 1258-59). "A contract can only exist when there is an understanding common to both parties. In other words, 'formation of a valid contract requires a meeting of the minds as evidenced by a manifestation of mutual intent to contract.'" *Seward*, 426 P.3d at 1259 (quoting *Federal Nat'l Mortg. Ass'n v. Hafer*, 351 P.3d 622, 629–30 (Idaho 2015)); *see also Rouse v. Household Fin. Corp.*, 156 P.3d 569, 571 (Idaho 2007).

Here, Plaintiff moves the Court to enforce the parties' settlement agreement which provides, *inter alia*, that Defendant will pay Plaintiff $338,000 and execute various documents in exchange for a release and dismissal of the lawsuit with prejudice. (Dkt. 29 at 2-3; attested to by Fowler at Dkt. 40-1 ¶7). Defendant opposes the motion but does not

**REPORT AND RECOMMENDATION - 9**

address any of the arguments or evidence presented by Plaintiff. Instead, Defendant merely states that he "completely disagree[s] with and den[ies] everything." (Dkt. 41).[3]

### A. Plaintiff's Motion to Enforce Settlement Agreement.

The record in this case indisputably establishes both the parties' intent to contract and their mutual agreement to settle the case. The facts and circumstances surrounding the parties' settlement agreement, including the mediation session and subsequent negotiations, are undisputed.[4] Both parties' counsel and the mediator submitted sworn statements confirming that all parties attended a mediation session on October 18, 2021, resulting in a settlement of the case and evidenced by the MOU. *See, e.g.,* Dkts. 40-1 (declaration of Plaintiff's counsel at mediation), 40-2 (declaration of mediator), 40-2 (declaration of Defendant's counsel at mediation). The MOU states that the parties have reached a "mutually-acceptable resolution" of the lawsuit and specifically provides, "[t]he parties agree that a formal settlement agreement incorporating these terms shall be prepared by Plaintiff's counsel. Provided, however, that these terms shall be binding, effective, and enforceable." (Dkt. 26-1 at 2, 3). *See also* Dkt. 26-2 (Defendant's counsel confirmed, "I have my client's authority to sign the memorandum of understanding on his

---

[3] In an earlier filing that did not comply with 28 U.S.C. 1746, the Defendant admitted that he attended the mediation session with counsel, but "has not agreed to the settlement and therefore has not signed any documentation regarding such matter." (Dkt. 34).

[4] As such, the Court finds that an evidentiary hearing in this matter is not required. *Compare Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) ("[w]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.").

behalf.").[5] The parties' intent to be bound by the settlement is further evidenced by the fact that they notified the Court in December 2021 that the matter had settled. (Dkt. 23-1).

"The intent of the parties to contract is determined by the surrounding facts and circumstances" of each particular case, *Seward*, 426 P.3d at 1259, such as: "whether the contract is one usually put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and promises; and whether the negotiations themselves indicate that a written draft is contemplated at the final conclusion of the negotiations," *Lawrence v. Hutchinson*, 204 P.3d 532, 538 (Idaho 2009); *see also Gray v. Tri-Way Const. Servs., Inc.*, 210 P.3d 63, 69 (Idaho 2009) (citing *Intermountain Forest Mngmt., Inc. v. Louisiana Pacific Corp.*, 31 P.3d 921, 925 (Idaho 2001)).

"The best evidence to support the parties' intent to contract is to look at the words of counsel and their clients." *Seward*, 426 P.3d at 1259 (citations omitted). "A party's subjective, undisclosed intent is immaterial to the interpretation of a contract." *Id.* (quoting *J.R. Simplot Co. v. Bosen*, 167 P.3d 748, 751 (Idaho 2006) (finding Bosen's subjective intent or belief did not create a genuine issue of material fact where Bosen did not contend he ever verbalized to any of Simplot's agents his intent not to be personally

---

[5] All that remained to be resolved after the mediation session was "the more intricate details on the payment schedule in the settlement agreement." (Dkt. 40 at 2). Those details were subsequently resolved by the parties, via email. (Dkt. 26-3 (attested to Plaintiff's counsel at Dkt. 40-1 and Defendant's counsel at Dkt. 40-3)).

obligated under the contract). "The burden of proof is on the party asserting that the contract was binding. . .." *Intermountain Forest Mngmt.*, 31 P.3d at 925.

Here, Plaintiff presented evidence that Defendant's counsel confirmed Defendant's agreement to the MOU and, specifically, that he had his client's authority to sign the MOU on his behalf. (Dkt. 26-2 at 2 (attested to by Fowler in Dkt. 40-1 ¶ 6)). The mediator confirmed this understanding. (Dkt. 40-2 ¶ 5). Later, Defendant's counsel once again confirmed his client's approval of the more detailed Settlement Documents after a requested change was made. (Dkt. 26-3 at 5 (attested to by Spiker in Dkt. 40-3 ¶ 3). Defendant does not provide any evidence or argument to dispute these facts or documents. Instead, Defendant merely states that he "completely disagree[s]" with Plaintiff and "den[ies] everything." (Dkt. 41 at 2). Defendant's blanket denial, without more, is insufficient to satisfy his burden to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The parties' words and conduct evidence that they had reached a meeting of the minds on the material terms of the settlement agreement. The MOU provided language stating that the terms agreed to would be binding, effective and enforceable. (Dkt. 40-2 ¶ 4). Subsequent emails between the parties resolved additional details such as the payment schedule. (Dkt. 40-1 ¶ 6; Dkt. 40-3 ¶ 3). Defendant's counsel stated his client agreed to the MOU with the added terms and he had authority to sign the MOU on his client's behalf. *Id.* The record shows that parties reached a meeting of the minds on all material

terms of their agreement and intended the terms within Settlement Documents to fully settle the case.

The Court notes that Defendant previously argued that he did not agree to the settlement, that the statute of limitations has run on the underlying loan, and "I am broke financially." (Dkt. 30).  As noted by Judge Winmill, none of these arguments were supported by evidence, leading him to deny, without prejudice, Plaintiff's initial Motion for Sanctions (Dkt. 35).  Even if Defendant's arguments were considered here, the Court finds they are insufficient to overcome Plaintiff's evidence of a settlement between the parties.

First, the record before the Court does not support Defendant's broad assertion that he did "not agree to anything," (Dkt. 30).  Presumably, this denial relates to Defendant's position that he did not agree to the terms of the settlement. *See* Dkt. 32 ("Defendant has not agreed to the settlement").  As set forth above, the record reflects that Defendant's attorney confirmed, in writing, that Defendant had accepted the MOU and that Defendant had authorized his counsel to sign on his behalf, and later also confirmed his client's acceptance of the more detailed Settlement Documents.  Defendant now contends that he "did not agree with his counsel, never signed a settlement agreement and has subsequently terminated the relationship with previous counsel." (Dkt. 32).  But he offers no evidence or testimony to support that position. Without more, and

**REPORT AND RECOMMENDATION - 13**

in light of the undisputed record before the Court, Defendant's contention that he did not agree to the settlement agreement is without merit.[6]

Second, the Defendant asserts that the 5-year statute of limitations "pertains to the claims in the underlying actions." (Dkt. 32). It is a matter of law such a claim is an affirmative defense to the underlying contractual claim. As set forth herein, the underlying claim has now been resolved by the settlement agreement. *See Gater.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1130 (9th Cir. 2005) (holding that "the parties' settlement agreement has wholly eviscerated the dispute that prompted [the plaintiff] to initiate this suit," thereby rendering all the issues and claims related to the underlying action moot); *Thunder Hawk v. Cramer*, 837 F. App'x 518 (9th Circ. 2021) (holding that appeal of the summary judgment was "moot" because "the parties entered into a valid settlement agreement."). Thus, any argument that the statute of limitation applies is moot as it relates to the underlying action and inapplicable to the settlement agreement.[7]

---

[6] Moreover, although Defendant does not argue that his attorney lacked authority to enter into the settlement agreement on his behalf, the Court finds that there is sufficient and undisputed evidence in the record to demonstrate that Spiker had authority to enter into the settlement agreement on behalf of Defendant. *See, e.g., Larson v. Heritage Square Assoc.*, 953 F.2d 1533, 1537 (9th Cir. 1992) (explaining the "heavy burden" a party bears to rebut the presumption that his or her attorney had authority to act on the client's behalf).

[7] The MOU makes clear that the parties wished 'to avoid further litigation" and dismiss the litigation with prejudice. (Dkt. 26-1 at 3, attested to by Fowler (Dkt. 40-1 ¶ 5) and Squyres (Dkt. 40-2 ¶ 4). Thus, permitting Defendant to raise a statute of limitation argument now would substantially prejudice Plaintiff. *See Larson v. Warner Bros. Entertainment, Inc.*, 640 F. App'x 630, 633 (9th Cir. 2016).

Finally, Defendant asserts that he is "broke financially." (Dkt. 30). Even if true, such fact has no bearing on whether a settlement agreement was reached in this matter. Defendant seems to acknowledge this point in his later filing wherein he conceded that "[i]nability to pay is not a defense to an obligation to pay," rather his point about his financial circumstances was offered as a "courtesy of notifying the Plaintiff of Defendant's financial status." (Dkt. 32 at 2).

In light of the foregoing, the Court finds that Plaintiff has presented undisputed evidence that the parties reached a settlement in this matter and that the terms and conditions of such settlement are reflected in the Settlement Documents. Defendant has not made a showing – let alone a sufficient showing – that a genuine issue of material fact exists to defeat Plaintiff's motion to enforce the settlement agreement between the parties. Accordingly, the Court will GRANT Plaintiff's motion to enforce the settlement agreement.

### B. Plaintiff's Motion for Sanctions

In addition to seeking an order from the Court that the parties entered into a settlement agreement in this matter, Plaintiff asks this Court: (1) to find that Defendant acted in bad faith in refusing to sign the settlement agreement and, therefore, order him to sign the settlement agreement; and (2) issue an Order or Judgment explicitly stating the terms of the settlement agreement and order that the Court will retain jurisdiction of this matter to enforce the settlement agreement. (Dkt. 40 at 2). Defendant did not address the issue of sanctions.

Courts have long held that holding parties to the terms of valid settlement agreements "is critically important . . .The interests of equity, judicial economy, and finality all militate strongly against efforts to renege on a settlement." *Harper v. Nev. Prop. 1*, 552 F. Supp. 3d 1033, 1045 (D.Nev. 2021).  See also *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (enforcing a settlement agreement "has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time-consuming litigation").

Given these important considerations, courts possess inherent power to sanction a party for bad faith conduct in executing or failing to execute a settlement agreement. *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1258 (10th Cir. 2015). The party moving for sanctions has the burden of demonstrating the non-moving party's conduct amounted to acting with bad faith or improper purpose. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015).

The Court's inherent power to impose sanctions may include monetary fines. *See, e.g., Slovak v. Golf Course Villas Homeowners' Assoc.*, 2020 U.S. Dist. LEXIS 33118 at *17 (D. Nev. Feb. 26, 2020) (citing *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472-73 (D.C. Cir. 1995)); awards of attorneys' fees and expenses (*see Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *Roadway Express Inc. v. Piper*, 447 U.S. 752, 765 (1980)), and contempt sanctions (*Id.* at 764).

Here, Plaintiff asks the Court to find Defendant acted in bad faith in refusing to sign the settlement agreement, and to order him to sign the agreement. Additionally, Plaintiff asks the Court to issue an Order or Judgment explicitly stating the terms of the

**REPORT AND RECOMMENDATION - 16**

settlement agreement and retain jurisdiction to provide Plaintiff with the ability to return to this Court and enforce the settlement agreement. (Dkt. 40). As explained above, the Court finds that the parties executed an enforceable settlement agreement and orders the parties to sign and execute the Settlement Documents. (Dkt. 29). Plaintiff fails to articulate a basis to award further sanctions, such as attorney fees or expenses incurred in bringing this motion. Accordingly, the Court will deny an award of sanctions against the Defendant beyond ordering the parties to execute the Settlement Documents.

Finally, Plaintiff asks the Court to retain jurisdiction over enforcement of the settlement agreement to allow the parties to return to this Court should the agreement be breached. The decision to retain jurisdiction over an action to enforce a settlement agreement is within the Court's discretion. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (explaining retention of jurisdiction lies within courts discretion and absent an "independent basis for federal jurisdiction" or a "dismissal order . . . retain[ing] jurisdiction over the settlement agreement . . . enforcement of the settlement agreement is for state courts" by means of breach of contract action); *see also Davis v. Brown*, 706 F. App'x 49, 50-51 (2d Cir. 2017) ("Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure does not enable parties to obligate a court to retain [] jurisdiction [to enforce a settlement agreement].") Here, the Court, in its discretion, declines to retain continuing jurisdiction over the settlement agreement.

## RECOMMENDATION

NOW THEREFORE IT IS HEREBY RECOMMENDED:

**REPORT AND RECOMMENDATION - 17**

1)    The District Court **GRANT** in part Plaintiff's Motion to Enforce Settlement Agreement and Renewed Motion for Sanctions (Dkt. 40) insofar as the Court orders the parties to sign and execute the Settlement Documents provided by Plaintiff within fourteen (14) days of the date of the Court's order adopting this recommendation and satisfy the terms as stated therein. (Dkt. 29 at 2-5); and

2)    The District Court **DENY** in part Plaintiff's Motion to Enforce Settlement Agreement and Renewed Motion for Sanction (Dkt. 40) insofar as the Plaintiff seeks to have this Court impose additional sanctions against Defendant and retain jurisdiction over enforcement of the Settlement Agreement after this matter is resolved.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: August 28, 2023

_____
Honorable Debora K. Grasham
United States Magistrate Judge